IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) | |
| PAUL DORSA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:13-cv-01025 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| MIRACA LIFE SCIENCES, INC., ) | MAGISTRATE JUDGE FRENSLEY |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is a Motion for Review of Nondispositive Order of Magistrate Judge filed by Plaintiff Paul Dorsa. (Doc. No. 215). Through the Motion, Dorsa seeks review of the Magistrate Judge's November 13, 2023 Order (Doc. No. 205) that denied the parties' Joint Motions for Telephonic Discovery Conference (Doc. Nos. 185, 196). Defendant filed a response to the motion for review. (Doc. No. 219). For the reasons stated below, the Motion for Review is **GRANTED**.

### I. BACKGROUND

Paul Dorsa brought this action on behalf of himself and in the name of the United States of America alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. by Defendant Miraca Life Sciences, Inc. ("Miraca"). The claims in this matter have been resolved by settlement, except for Dorsa's claim that he was fired in retaliation for efforts in furtherance of an FCA claim or to stop activity that he believed was in violation of the FCA. (*See* Doc. Nos. 59, 87). Miraca asserts that Dorsa was fired after a reasonable investigation for violating the company's workplace harassment policy, and for concerns about his performance. Dorsa argues Miraca's

reasons for termination are pretext for retaliation for him engaging in protected conduct under the FCA.

Among the numerous discovery disputes brought to the Magistrate Judge was Dorsa's contention that Miraca was improperly withholding a number of documents by asserting unsupported claims of attorney-client privilege or work product doctrine. After conducting an *in camera* review of the challenged documents, the Magistrate Judge sustained Miraca's claims of attorney-client privilege or work product doctrine over all but fifteen (15) documents, and ordered one additional document to be produced with redactions. (Doc. No. 205 at 20-21). Now before the Court is Dorsa's motion for review of the Magistrate Judge's Order. Dorsa argues the Magistrate Judge erred when he sustained Miraca's objections to producing 42 documents related to his investigation and termination without holding a discovery conference or permitting the parties to file formal briefing on the relevant issues. Substantively, Dorsa argues that the Magistrate Judge erroneously concluded that Miraca did not waive privilege as to these documents and that these documents did not fall within the crime-fraud exception.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a district court may "reconsider" a magistrate judge's decision on a non-dispositive, non-excepted, pending pretrial matter if it is "clearly erroneous or contrary to law." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id*. (quotation marks omitted). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. (cleaned up). And "an order

2

is contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id*. (cleaned up).

## III. ANALYSIS

Dorsa seeks review of the portions of the Magistrate Judge's Order that apply to 42 documents related to Miraca's investigation and his termination—specifically, the Magistrate Judge's finding that Miraca has not waived privilege as to these documents based on its alleged reliance on and/or disclosure of advice from counsel related to the investigation and termination and to the Magistrate Judge's finding that the crime-fraud exception to privilege does not apply.

For the reasons stated below, the Court finds that Miraca has waived attorney client privilege as to documents concerning Dora's refusal to sign electronic medical records donation forms and complaints about Miraca's donation program, and documents related to the investigation and termination. In light of this conclusion, the Court need not address Dorsa's contention that the crime-fraud exception applies.

### A. Waiver

"The attorney-client privilege is 'narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit.'" *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)). The attorney-client privilege "may implicitly be waived when [the] defendant asserts a claim that in fairness requires examination of protected communications." *Id*. at 605. "Litigants cannot hide behind the privilege if they are relying on privileged communications to make their case' or, more simply, cannot use the privilege as 'a shield and a sword." *In re United Shore Fin. Servs., LLC*, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (quoting *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)). "Thus, the privilege may be implicitly waived when defendant asserts a claim that in

3

fairness requires examination of the protected communications." *Id*. (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

"The classic case for implied waiver arises when a party relies on the advice of counsel but then objects to discovery concerning the content or context of that advice." *Whitworth v. Consol. Biscuit Co.*, 2007 WL 9736117, at *5 (E.D. Ky. Feb. 2, 2007). "[A]dvice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id*. at * 17. "For waiver to occur, the party alleged to have waived must affirmatively assert reliance on advice of counsel as a claim or defense element." *Id*. "A party must affirmatively use privileged communications to defend itself or attack its opponent in the action before the implicit waiver rule is applicable." *United States v. Ohio Edison Co.*, No. C2–99–1181, 2002 WL 1585597, at *5 (S.D. Ohio Jul. 11, 2002).

Once the privilege is waived as to some communications, the waiver extends to "all other communications on the same subject." *Anderson v. Clarksville Montgomery Cnty. School Bd. & School Dist.*, 229 F.R.D. 546, 546 (M.D. Tenn. 2005) (citing *Edwards v. Whitaker*, 868 F. Supp. 226 (M.D. Tenn. 1994)); *see also*, *Barnard v. Powell Valley Elec. Coop.*, No. 3:18-cv-537-CEA-DCP, 2021 WL 6275267, at *3 (E.D. Tenn. Mar. 5, 2021) ("When a party reveals privileged communications or otherwise waives the protections of the attorney-client privilege, 'that party waives the privilege as to all communications on the same subject matter.'"). An implied waiver, however, is construed narrowly. *See In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) ("Courts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.") (citing *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)). "The party claiming attorney-client privilege has the burden to show that it has not waived the privilege." *Wolpert v. Branch Banking Trust & Co.*, 2023 WL 7003683, at *5 (E.D. Tenn. Oct. 24, 2023) (citations omitted).

4

Although the Court refers to attorney-client privilege throughout, Miraca claims some of the documents at issue are also protected by work-product doctrine, which generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation. *See Reg'l Airport Auth. Of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986)). Because "there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege," the analysis is the same and waiver of attorney-client privilege applies equally to work-product. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 307 (6th Cir. 2002).

Dorsa argues Miraca waived attorney-client privilege over communications and documents related to the workplace harassment investigation and termination because Miraca: (1) relied on communications with and advice of counsel in an attempt to legitimize and/or justify the investigation and termination; (2) selectively disclosed communications related to Dorsa's communication of compliance concerns about Miraca's donation program; and (3) placed the substance of communications with counsel in issue.

For the reasons discussed below, the Court finds any one of these reasons results in waiver of the privilege as to documents related to the investigation and termination.

### B. Reliance on Communications with and Advice of Counsel

Dorsa argues that Miraca repeatedly emphasizes in its summary judgment briefing that it conferred with outside counsel in connection with the investigation and termination, relied on counsel's advice, and disclosed the nature of that advice—that outside counsel believed Dorsa's

5

conduct violated the harassment policy—in an attempt to legitimize the investigation and termination decision.[1] These include the following:

- [Miraca's Assistant General Counsel and Chief Compliance Officer John Rasmussen] worked with John McCarthy, outside counsel at a preeminent employment law firm Littler Mendelson, and Miraca received advice about the investigation and Plaintiff's conduct. (Miraca Br., Doc. No. 191 at 3; *see also id*. at 7 (same));

- Mr. Rasmussen prepared the first draft [of the investigation report] on September 12, 2013, and he sent that draft of the investigation to Mr. McCarthy. SUMF ¶ 53. Mr. Rasmussen sought and received legal advice from Mr. McCarthy regarding the investigation beginning on or around September 12, 2013, including by requesting Mr. McCarthy's review of the investigation report. SUMF ¶¶ 53, 55. On September 18, 2013, Mr. Rasmussen sent a revised draft of the investigation report to Mr. McCarthy, which included Mr. Rasmussen's interview with Plaintiff on that date. SUMF ¶ 53. (*Id*. at 9).

- As the investigation and assessment of Plaintiff's conduct continued from September 18 to 23, Miraca's in-house counsel and outside counsel exchanged numerous emails regarding the sexual harassment investigation, and they include advice regarding the investigation and Plaintiff's conduct. (*Id*. at 11 (no citation to the record provided)).

- Outside counsel drafted a termination letter. (*Id*. (no citation to the record provided).

- Employment counsel drafted the termination letter, after reviewing the investigation report and after numerous communications with Miraca about the investigation and Mr. Rasmussen's report. (*Id*. at 24 (citing Miraca SOF ¶ 28)).

Miraca also refers to communications with counsel and advice of counsel in its Statement of Undisputed Material Facts.[2] These include the following:

---

[1] Dorsa also argues that Miraca's disclosure of the Investigation Report prepared by Miraca's Assistant General Counsel John Rasmussen waives privilege as to all communications related to the investigation and termination decision. Because the Court finds waiver on other grounds, it does not consider whether disclosure of the Investigation Report alone results in waiver of the attorney-client privilege or work-product doctrine.

[2] For ease of reference, Miraca's Statement of Undisputed Material Facts (Doc. No. 192) is cited as "Miraca SUMF ¶___."

6

- During Mr. Rasmussen's investigation, he worked with outside employment counsel, John McCarthy at Littler Mendelson, for advice regarding the investigation and his findings. (Miraca SUMF ¶ 44 (citing Rasmussen Dep.)).

- By September 12, 2013, Mr. McCarthy at Littler Mendelson had formed an opinion about whether Plaintiff's conduct violated the sexual harassment workplace policy, and he emailed Mr. Rasmussen regarding his opinion on this issue. (Miraca SUMF ¶ 55 (citing to Miraca's Privilege Log generally).

- Plaintiff did not submit the EthicsPoint report until September 16, 2013, at the direction of his counsel, after he learned that he was being investigated for sexual harassment and after Mr. McCarthy had shared his opinion with Mr. Rasmussen regarding whether Plaintiff's conduct violated the company's policy. (Miraca SUMF ¶56 (citing Plaintiff's Privilege Log, dated July 28, 2023, at lines 17 and 18)).

In addition to these references to consultation with and advice of counsel in Miraca's summary judgment briefing, Dorsa adds that Basile's deposition testimony and Miraca's Response to Plaintiff's Interrogatory 3—requesting Miraca to "describe in detail each and every reason you terminated Plaintiff's employment"—shows that Miraca is using its communications with counsel as a shield and a sword. Basile testified that he relied on the harassment investigation report and Rasmussen's "guidance as to what he found" during the course of the investigation for his decision to terminate Dorsa. (Basile Dep., Doc. No. 215-3 at 18-19, 48, 177-178). Miraca's response to Plaintiff's Interrogatory No. 3 requesting the reasons for Dorsa's termination confirmed Basile's stated reasons for termination. (Miraca Second Amended and Supplemental Response to Interrogatory No. 3, Doc. No. 215-4). Miraca also added that "Miraca also had privileged communications with and sought advice from counsel, as reflected on Miraca's Privilege Log." Because the request was for "each and every reason [Miraca] terminated Plaintiff's employment, the Court concludes that one of the reasons Miraca terminated Dorsa's employment" was because of "privileged communications with and [] advice from counsel." (*See id.*).

Dorsa argues that Miraca's reliance on its communications with counsel in its defense waives the privilege as to communications regarding the investigation and termination. Miraca argues that it has not waived attorney-client privilege as to these topics because it has not asserted an advice of counsel defense and, in fact, has expressly disavowed that it is relying on any such defense or disclosed anything about the substance of counsel's advice. Miraca argues mere reference to counsel's involvement in Dorsa's termination does not affirmatively use privileged communications to defend itself.

Here, Miraca's reliance on communications with and advice from counsel is not a mere reference to counsel's involvement in the investigation and termination. Without disclosing specifically what counsel advised, Miraca attempts to use its frequent consultations with counsel to cloak the investigation and termination in legitimacy in an effort to show that the decision to terminate Dorsa for violating the company's sexual harassment policy was not pretext for retaliation. And Miraca's argument that it has not disclosed the advice of counsel is somewhat disingenuous when it asserts that outside counsel "formed an opinion about whether Plaintiff's conduct violated the sexual harassment workplace policy" and he communicated that opinion to Miraca. (*See* Miraca SUMF ¶ 55 (citing Miraca Privilege Log generally)).[3] Particularly when,

---

[3] The Court notes that Miraca's citation to its Privilege Log does not support the asserted fact. (Miraca Privilege Log, Doc. No. 215-2). Not only is a general citation to the Privilege Log which contains over 100 entries insufficient to establish any particular fact, nowhere in the Privilege Log is it disclosed that outside counsel "had formed an opinion about whether Plaintiff's conduct violated the sexual harassment policy" and emailed Miraca regarding his opinion. (*Id*.). After careful review of the Privilege Log, the Court believes Miraca is relying on an email sent from John McCarthy, outside counsel, to John Rasmussen on September 12, 2013, listed as Item No. 26. (*Id*.). This document is described as "Communication with outside counsel regarding sexual harassment investigation of Paul Dorsa." But Miraca, in its Statement of Material Undisputed Facts ¶55, describes the content of that communication—specifically, that in the email McCarthy is communicating his opinion regarding whether Dorsa's conduct violated the sexual harassment workplace policy.

twelve days later, Miraca fired Dorsa for violating the sexual harassment policy.[4] Miraca's emphasis on its use of outside counsel concerning the investigation and termination waives the privilege as to these topics.

### C. Selective Disclosure—the September 13, 2013 Email

On September 13, 2013, Basile sent an email to Farr with the subject line "Re: Paul Dorsa."[5] (*See* Sept. 13, 2013 email (redacted), Doc. No. 217-1). Miraca redacted the bulk of the communication based on attorney-client privilege, but disclosed a few sentences. (*Id*.). In the portion that Miraca disclosed, Basile stated that Dorsa was refusing to sign donation forms but "was not able to be specific with [Basile] about his concerns." (*Id.*). In its summary judgment brief, Miraca argues that Basile's September 13, 2013 email "demonstrates that Dr. Basile did not know whether Plaintiff had concerns, or what they were." (Miraca Br., Doc. No. 191 at 9, 20).

Dorsa argues waiver occurred from Miraca's use of the unredacted portion of the email in an attempt to show that Dorsa's internal complaints were not specific enough to constitute protected activity under the FCA and that Miraca fired Dorsa for harassment. Dorsa complains

---

[4] Dorsa also argues that Rasmussen partially disclosed advice of counsel when he was asked whether McCarthy had provided advice about whether Dorsa's alleged conduct violated Miraca's harassment policy and he responded, "I don't ever remember [McCarthy] saying, X, Y, and Z are *not* sexual harassment." (Doc. No. 216 (citing Rasmussen Dep., Doc. No. 215-5 at 208-213 (emphasis added by Dorsa))). Rasmussen declined to answer on privilege grounds whether McCarthy advised that certain acts were harassment. (*Id*.). Dorsa argues that Rasmussen's testimony that McCarthy failed to identify conduct that did not constitute harassment, combined with Miraca's offensive use of the fact that McCarthy provided advice on the existence of policy violations, leaves no doubt as to the content of his advice. (*Id*.). The Court agrees that the direct implication of Rasmussen's testimony and Miraca's disclosures is that McCarthy advised Miraca that Dorsa's conduct violated Miraca's policy. (Doc. No. 196-1 at 4). However, because the Court finds that Miraca has waived the privilege as to communications concerning the investigation and termination for other reasons, it need not consider whether Rasmussen's testimony about what McCarthy *did not* advise constitutes a disclosure and consequent waiver of advice of counsel.

[5] The September 13, 2013 email is listed on Miraca's Privilege Log at Item No. 30 and described as "Communication with in-house counsel regarding discussion with Paul Dorsa about Miraca's business." (Miraca Privilege Log, Doc. No. 215-2).

that Miraca has released the portion of the email it believes supports its defense, while withholding the remainder of the email and other documents within the same subject.

The Court agrees that Miraca has selectively disclosed a portion of the email for its own benefit. The Court has reviewed the September 13, 2013 email, which is among the documents submitted for *in camera* review, and finds that the redacted portions of the email are not categorically different from the part that has been disclosed. Both the redacted and unredacted portions are Basile's summary of his interactions with Dorsa. Whether or not Basile provided the information for purpose of obtaining legal advice, Miraca was not justified in disclosing the three sentences that it has used in support of its defense while withholding the remainder of the communication. Further, by disclosing some communications about Dorsa's alleged compliance concerns and refusal to sign the donation forms, Miraca has waived privilege as to all communications on this topic. These documents are likely included within the broader category of documents related to the investigation and termination, but for clarity of the record, the documents specifically related to Dorsa's alleged concerns about the donation forms include the entirety of the September 13, 2013 email (Miraca_00000845), and the documents listed on Miraca's Privilege Log as entries 43 and 44 (H11362-0143-005022), 56 (H11362-0145-001619), 60 (H11362-0145-001581), 64(H11362-0145-001591), and 68(H11362-0145-001581).

D.  Placing the Communications in Issue—the September 16, 2013 Email

The September 16, 2013 email falls within the categories discussed above—documents related to the investigation and termination and documents related to Dorsa's alleged communication of compliance concerns and refusal to sign the donation forms—and must be produced for the reasons already stated. The Court finds it beneficial to discuss this email

separately because the parties have specifically relied upon this email in the summary judgment briefing.

The September 16, 2013 email sent from Frank Basile, Miraca's Chief Executive Officer, to John Rasmussen, Assistant General Counsel and Chief Compliance Officer, and Russell Farr, General Counsel is described on Miraca's Privilege Log as "Communication with in-house counsel containing draft termination letter for Paul Dorsa and discussing unsigned electronic health records donations forms." (*See* Miraca Privilege Log (Entries 43 and 44, Doc. ID H11362-0143-005022), Doc. No. 215-2). In response to Miraca's motion for summary judgment, Dorsa argued, based on the description of the September 16, 2013 email in Miraca's Privilege Log, that the email "containing draft termination letter for Paul Dorsa and discussing unsigned electronic health records donation forms" is direct evidence that Dorsa's termination was retaliatory. Miraca responded that the email is not direct evidence of retaliation and argued that because "the letter is privileged," Dorsa's assumption about the contents of the email was nothing but a "self-serving guess." (Doc. No. 202 at 5).

Miraca also relies upon this email in its Statement of Undisputed Material Facts as evidence that "[b]y September 16, Dr. Basile learned about the sexual harassment allegations against Plaintiff, which confirmed the rumors Dr. Basile had heard about Plaintiff, and he was frustrated with Plaintiff's inability to articulate his specific concerns, which did not have a connection to the FCA, and so Dr. Basile drafted a termination letter in an email for Mr. Rasmussen's review." (Miraca SUMF ¶ 57 (citing generally to Miraca's Privilege Log)). Although that statement does not cite to a specific entry in the Privilege Log (which is a problem in and of itself), it is clear that Miraca's citation to the Privilege Log is specifically to the September 16, 2013 email in which
11

Basile sent a draft termination letter to Rasmussen and Farr. (*See* Miraca Privilege Log, Doc. No. 215-2) (showing that this is the only email authored by Basile on September 16, 2013).

This asserted Statement of Fact relies on the September 16, 2013 email to suggest that Basile decided to terminate Dorsa because of the "sexual harassment" and "questions about his performance." Of course, neither of these reasons are provided in the Privilege Log, nor is there any evidence in the Privilege Log for the other assertion of fact in the Statement—that Basile knew of the sexual harassment investigation *before* he sent the draft termination letter on September 16, 2013. (*See* Miraca Privilege Log, Doc. No. 215-2) (showing emails regarding sexual harassment investigation, but Basile is not listed as a sender or recipient). The Privilege Log certainly does not show that Basile learned about the sexual harassment allegations, that these allegations confirmed rumors Basile had heard about Dorsa, or that Basile was frustrated with Dorsa's inability to articulate his specific concerns. (*Id*.). Even if it did, Miraca's use of the words "and so" suggest that the termination letter Basile drafted reflects these reasons for termination. In doing so, Miraca is relying on the substance of the communication—or its representation of the substance of the communication—while asserting privilege over the same. This Miraca cannot do without waiving the privilege. *See In re United Shore Fin. Servs., LLC*, 2018 WL 2283893, at *2 ("Litigants cannot hide behind the privilege if they are relying on privileged communications to make their case."). Accordingly, the Court finds Miraca has waived attorney-client privilege specifically as to the September 16, 2013 email (Document No. H11362-0143-005022), and it must be produced.

## IV. CONCLUSION

For the reasons stated, Dorsa's Motion for Review (Doc. No. 215) is **GRANTED** and Miraca is **ORDERED** to produce the 42 documents Dorsa highlighted on Miraca's Privilege Log. (Doc. No. 215-2).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE