# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* PAUL DORSA, ) ) ) Plaintiff, ) ) ) v. ) ) MIRACA LIFE SCIENCES, INC., ) ) Defendant. ) | Civil Case No. 3:13-cv-01025<br><br>Judge Campbell<br>Magistrate Judge Frensley |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT

Defendant, Miraca Life Sciences, Inc. ("Miraca") hereby responds to Plaintiff's Motion to Alter or Amend the Judgment (the "Motion").

In his Motion to Alter or Amend the Judgment, Plaintiff requests that the Court: (i) double the jury's back pay award from $732,298 to $1,464,596, (ii) award pre-judgment interest on the undoubled back pay in the amount of $1,346,109.91, (iii) award pre-judgment interest on the compensatory damages, in the amount of $561,742.93, and (iv) award post-judgment interest on the original judgment and any amended judgment in accordance with 28 U.S.C. § 1961.[1] Plaintiff's requests for pre-judgment interest reach far beyond what he is entitled to under applicable law. Plaintiff seeks a massive windfall of $1,346,109.91 in interest—nearly double the back pay award of $732,298— in two steps neither of which is supported by applicable law. First,

---

[1] Miraca does not dispute that Plaintiff is entitled to double back pay under the False Claims Act, 31 U.S.C. § 3730(h)(1), nor does it dispute that Plaintiff is entitled to post-judgment interest at the statutory rate under 28 U.S.C. § 1961.

1

he erroneously applies Tennessee's 10% statutory interest rate, rather than the federal statutory rate to the back pay. Second, he seeks interest for the five years that Miraca was not even aware of the lawsuit. In addition to seeking a massive windfall in interest on the back pay award, Plaintiff egregiously requests interest on the jury's compensatory damages award which he justifies in part by ignoring *Hopkins v. Nichols*, 2024 U.S. Dist. LEXIS 164386, at *3-4 (M.D. Tenn. Sept. 12, 2024) (declining to award pre-judgment interest on the jury's compensatory damages award). As discussed in more detail below, the Court should calculate the amount of interest that Plaintiff is awarded based on the federal statutory rate and the period that Miraca was aware of Plaintiff's claims and reject Plaintiff's attempt to receive a windfall that would go far beyond making him "whole," which is all that is required under the law.

## ARGUMENT

### A. Pre-Judgment Interest Serves to Make the Prevailing Party Whole and Not to Punish the Party Responsible for the Damages.

Pre-judgment interest serves two purposes: (1) to discourage a defendant from delaying the litigation and the payment of back pay wages, and (2) to make a plaintiff "whole" and to compensate the plaintiff for the money damages they incurred because of any wrongdoing. *See Schumacher v. AK Steel Corp. Ret. Accumulation Plan*, 711 F.3d 675, 686 (6th Cir. 2013) ("One purpose of an award of pre-judgment interest is to compensate plaintiffs for the "lost interest value of money wrongly withheld"); *Ramadei v. Radiall USA, Inc.*, 2024 U.S. Dist. LEXIS 166119, at *4 (D. Ct. Sept. 16, 2024) ("The purpose of pre-judgment interest is to 'discourage an employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages.'") (citing *Chandler v. Bombardier Cap., Inc.*, 44 F.3d 80,83 (2nd Cir. 1994)); *Yerkes v. Ohio State Highway Patrol*, 2024 U.S. Dist. LEXIS 217755, at *54 (S.D. Ohio Dec. 2, 2024) (noting that pre-judgment interest is awarded to "make a discrimination plaintiff whole" and that it "compensates

[plaintiffs] for the true cost of the money damages they incurred"). An award of pre-judgment interest should not punish the party responsible for the damages, nor should it provide the prevailing party with a windfall. *See Colonel's Inc. v. Cincinnati Milacron Mktg. Co.*, 1998 U.S. App. LEXIS 11756, at *15 (6th Cir. 1998) ("Pre-judgment interest is not intended to punish the party responsible for the underlying damages, but rather to fully compensate the aggrieved party."); *Naylor Med. Sales & Rentals, Inc. v. Invacare Continuing Care, Inc.*, 2011 U.S. Dist. LEXIS 59668, at *38-39 (W.D. Tenn. June 3, 2011) ("Pre-judgment interest is intended to compensate parties that have been damaged because they have been deprived of the use of that money from the time they should have received it until the date of judgment – not to punish the wrongdoer.") (internal citations and quotations omitted); *Krystal Co. v. Caldwell*, 2012 U.S. Dist. LEXIS 33213, at *32 (E.D. Tenn. Mar. 13, 2012) (recognizing that Respondent should be compensated and made whole, but declining to apply the maximum rate of 10% under Tennessee law because it would be a windfall for Respondent). Here, Plaintiff seeks application of a state's maximum interest rate to a pre-judgment interest period that far exceeds Miraca's knowledge of and involvement in this, a wholly federal matter. The Court should reject this approach as it is needlessly punitive and, if adopted, would result in a substantial windfall for Plaintiff.

      **B. The Court Should Calculate the Interest Period from the Date this Case Was Unsealed on January 8, 2019, and Not January 8, 2014.**

Plaintiff's pre-judgment interest period should be reduced to account for his own delays in the litigation. *See HRT Enters v. City of Detroit*, 2023 U.S. Dist. LEXIS 155694, at *34 (E.D. Mich. Sept. 1, 2023) (noting that a reduced pre-judgment interest period was appropriate for the period that Plaintiff delayed the case) (citing and quoting *Am.'s Collectibles Network, Inc. v. Sterling Com. (Am.) Inc.*, 2018 U.S. Dist. LEXIS 245968, at *34 (E.D. Tenn. Jan. 9, 2018)) ("The Court. . . selected the federal postjudgment interest rate to calculate prejudgment interest because

3

equitable considerations – namely, the length of this litigation and delays not attributable to Defendant – merited awarding prejudgment interest at a rate significantly less than the maximum permitted under Tennessee law")). The Sixth Circuit has held that courts have the discretion to determine the appropriate pre-judgment interest period and to limit that period based on any delays created by the prevailing party seeking pre-judgment interest. *See Lensing v. Potter*, 2012 U.S. Dist. LEXIS 184829, at *14 (W.D. Mich. Feb. 8, 2012) ("The date through which pre-judgment interest is awarded. . . is left to the sound discretion of the Court") (citing and quoting *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 843 (6th Cir. 1994)). Miraca submits that the appropriate pre-judgment interest period is January 8, 2019, the date of the unsealing of this case, through December 18, 2024, the date of judgment. *See* Dkt. 73 (Order granting the Government's motion to unseal the case). As discussed herein, Miraca was unaware of the litigation until after January 8, 2019, and submits that it cannot fairly be faulted for delaying the litigation when it did not even know about it.

Plaintiff proposes January 8, 2014 as the starting point for the interest period because Miraca's damages expert, Mr. Robinson, opined that it was reasonable to assume that Miraca would have terminated Plaintiff without cause on that date based on the average length of tenure of Plaintiff's successors. Motion at 5. While Plaintiff is correct that the jury awarded Plaintiff the exact number that Mr. Robinson proposed in that scenario, the jury did not provide, nor was it asked to explain, it's rationale for doing so. What is known, however, is that Miraca was unaware of Plaintiff's retaliation claim until this case was unsealed on January 8. 2019. *See* Dkt. 73. Indeed, on November 15, 2013, Plaintiff amended his sealed *qui tam* complaint to include a retaliation claim. *See* Dkt. 10. Miraca was unaware of the retaliation claim for five years until after Plaintiff's *qui tam* claims were settled and the case was unsealed on January 8, 2019. Thus, Miraca did not

4

have the opportunity to litigate this case until then nor could it have been unjustly enriched by any back pay, when it was not even aware of the claim against it. *See Pittington v. Great Smoky Mt. Lumberjack Feud, LLC*, 800 F.3d 791, 807 (6th Cir. 2018) (noting that one of the case specific factors that a court should consider is the "the prevention of unjust enrichment on behalf of the wrongdoer").

Further, Plaintiff could have filed his retaliation claim separately and made Miraca aware of the claim as early as November 15, 2013, but *he chose not to do so*. *See HRT Enters*, 2023 U.S. Dist. LEXIS 155694, at *34. Thus, the initial more than five-year delay in litigating Plaintiff's retaliation claim is entirely on him. It is the result of his decision to include his retaliation claim in the sealed *qui tam* action, rather than to file it as a stand-alone action. Plaintiff attempts to justify his request for an extended pre-judgment interest period by citing various delays he alleges were caused by Miraca. In doing so, Plaintiff ignores two realities of this case: 1) the delays Plaintiff cites occurred *after* the case was unsealed; and 2) the initial more than five-year delay was caused solely by Plaintiff's decision to file his retaliation clam under seal. The Court should therefore reject Plaintiff's pre-judgment interest period beginning on January 8, 2014.

C. **The Court Should Calculate the Pre-Judgment Interest Rate in Accordance with 28 U.S.C. § 1961, and Not Tennessee's Maximum Rate of 10%.**

Miraca submits that the Court should calculate pre-judgment interest in accordance with 28 U.S.C. § 1961, and not award Tennessee's maximum rate of 10%, as Plaintiff argues. The Treasury Rate, when viewed in the context of the False Claims Act's remedial scheme and the specific facts of this case, fairly and adequately compensates Plaintiff. The Court should reject Plaintiff's argument for applying the maximum rate of 10% because: (a) Miraca was not aware of the litigation until January 8, 2019, and thus did not and could not have delayed the litigation, as discussed in Section A above, (b) the prevailing approach of courts applying pre-judgment interest

5

Case 3:13-cv-01025    Document 318    Filed 01/28/25    Page 5 of 15 PageID #: 4936

to back pay awards in FCA and federal question cases is to look to and apply the federal Treasury Rate in accordance with 28 U.S.C. § 1961, *see Maier v. Bounds Performance, Inc.*, 2023 U.S. Dist. LEXIS 215331, at *15-16 (M.D. Tenn. Nov. 9, 2023); *Umfress v. City of Memphis*, 2020 U.S. Dist. LEXIS 261844, at *3 (W.D. Tenn. Oct. 19, 2020); *Thompson v. Quorum Health Res., LLC*, 2010 U.S. Dist. LEXIS 50520, at *24 (W.D. Ky. May 20, 2010), and (c) the federal statutory rate, which varies over time, reflects the time-value of money during the period in question here whereas the fixed 10% rate Plaintiff seeks would result in a massive windfall for Plaintiff and go far beyond making him whole.

### i. The Court Should Apply the Treasury Rate in Accordance with 28 U.S.C. § 1961.

Plaintiff's sole claim here was a federal statutory claim. As such, the federal statutory post-judgment interest rate, and not the Tennessee state rate, applies to his back pay award, provided that the Court ensures that the statutory rate is fair. *See Pittington*, 800 F.3d at 807. Other federal courts in Tennessee, when faced with the question of whether to apply the state's interest rate, rather than the Treasury Rate, to wholly federal claims, have declined to do so. *See Maier v. Bounds Performance, Inc.*, 2023 U.S. Dist. LEXIS 215331, at *15-16 (M.D. Tenn. Nov. 9, 2023) (noting that where a "case involves a federal question, it is within the court's discretion to determine an appropriate interest rate," and "[t]o calculate the pre-judgment interest rate, courts often apply the method prescribed by 28 U.S.C. § 1961 which is used to calculate post-judgment interest," and declining plaintiffs' request to apply the maximum rate of 10% under Tennessee law "as it would constitute a windfall"); *Umfress v. City of Memphis*, 2020 U.S. Dist. LEXIS 261844, at *3 (W.D. Tenn. Oct. 19, 2020) (noting that the "federal interest rate is appropriate for a case based on a federal question") (citing *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473,497 (6th Cir. 2013)).

6

At least one other Sixth Circuit court has adopted a similar approach in an FCA retaliation case. *See Thompson v. Quorum Health Res., LLC*, 2010 U.S. Dist. LEXIS 50520, at *24 (W.D. Ky. May 20, 2010). In *Thompson*, the court calculated pre-judgment interest on the jury's back pay award using the post-judgment interest rate under 28 U.S.C. § 1961 reasoning that "the Treasury rate would adequately compensate Plaintiff as if he had use of that money from 2006 to 2010, thus serving its purpose in making Plaintiff 'whole.'" 2010 U.S. Dist. LEXIS 50520, at *24. In doing so, the court rejected the plaintiff's alternative proposals of 5% and 8% interest rates, noting that plaintiff "failed to present a compelling reason," as to why either of those rates should apply. Here, like in *Thompson*, Plaintiff has failed to present compelling reasons as to why the maximum rate of 10% would be appropriate and would not result in a windfall to him, nor has he explained why application of the federal post-judgment interest statute is unfair in the context of this specific federal case.

Instead, Plaintiff offers a series of inapposite cases in support of his argument that courts frequently award pre-judgment interest at the maximum of 10%. None of the cases cited involve FCA retaliation claims or any other question of federal law. *See FLSmidth, Inc. v. Fiber Innovation Tech, Inc.*, 2014 WL 11456096, at *2 (E.D. Tenn. Oct. 8, 2014) (diversity case regarding breach of contract, promissory estoppel and unjust enrichment claims), *Wackenhut Servs., Inc. v. Int'l Guards Union of Am.*, Local No. 3, 2010 WL 1491439, at *8 (E.D. Tenn. Apr. 12, 2010) (challenge to an arbitration award), *Teague v. Kidd,* 2012 WL 5869637, at *10 (Tenn. Ct. App. Nov. 21, 2012) (estate dispute under Tennessee state law). In fact, none of Plaintiff's cases involve a statute, like the False Claims Act, in which the remedial scheme fairly and adequately redresses the applicable harm. As such, the Court should reject Plaintiff's effort to apply Tennessee's maximum 10% rate to this distinctly federal claim.

7

### ii. Using the Maximum Rate of 10 Percent under Tennessee Law will Result in a Massive Windfall for Plaintiff.

In arguing against application of the federal statutory rate, Plaintiff also grossly overstates the amount of interest to which he is entitled. The purpose of pre-judgment interest is to make Plaintiff whole, and to put him in the position he would have been in before any alleged wrongdoing. *See Yerkes v. Ohio State Highway Patrol*, 2024 U.S. Dist. LEXIS 217755, at *54 (S.D. Ohio Dec. 2, 2024) (noting that pre-judgment interest is awarded to "make a discrimination plaintiff whole" and that it "compensates [plaintiffs] for the true cost of the money damages they incurred"); *Pittington*, 800 F.3d at 807 (noting that one of the case specific factors that a court should consider is "the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing"). Using the maximum rate of 10% under Tennessee law would result in a windfall for Plaintiff, which goes well beyond making Plaintiff whole and putting him in the position he would have been prior to any wrongdoing, which is all that the law requires. *See Pittington*, 800 F.3d at 807. Here, the FCA's remedial goals are achieved as Plaintiff will receive double the back pay in the amount of $1,464,596 and in accordance with the FCA. *See id.* Even accounting for the time value of money and inflation, Plaintiff is not entitled to nearly double the back pay award in interest.

Plaintiff's proposed estimate wrongly assumes that he would have received the entirety of the $732,298 back pay award on January 8, 2014. He compounds the error by applying interest to that gross amount.[2] In so doing, he fails to account for, and does not explain, why he would be

---

[2] Miraca notes, and Plaintiff identifies in his Motion, that had he accepted the severance offered in connection with his termination on September 24, 2013, he would have received $610, 820 at that time. Motion at 8. Plaintiff argues that Miraca "avoided paying Dorsa" the severance amount, but that is blatantly false. Miraca offered him severance in accord with Dorsa's employment agreement. He chose not to accept it.

8

entitled to interest on the gross amount instead of the net amount. Had he been terminated on January 8, 2014, as Mr. Robinson opined in that scenario, Plaintiff would have had only the net after-tax value of the severance amount to invest. Thus, awarding Plaintiff 10% interest on the gross amount effectively provides him a much higher growth rate on the net amount he actually would have received. Awarding 10% interest on the full (gross) back pay amount over the course of 11 years would therefore be improper.

Further, courts have made clear that pre-judgment interest is intended to compensate a plaintiff for the loss of the use of money and not to account for the endless possibilities of returns on any potential investments that Plaintiff could have made. *See EEOC v. New Prime, Inc.*, 2015 U.S. Dist. LEXIS 166656, at *10 (W.D. Mo. Dec. 14, 2015) (rejecting plaintiff's argument that the "consumer and mortgage rates are higher than the Treasury rate. . . and that the Treasury rate is a poor reflection of lost investment opportunities because an investor would not be restricted to the low returns offered on short-term one-year Treasury bills," and confirming that the "Treasury rate is the appropriate prejudgment interest rate. . ."). Courts that address the time value of money do so by applying the federal statutory rate and not by analyzing the potential investments that a plaintiff could have made. *See id.* Plaintiff's assertions and speculations regarding if, and how, he would have invested the money, and asserting that the pre-judgment interest rate should track those rates, are inappropriate in deciding what rate to use, particularly in the context of this case.

In sum, the 10% interest rate proposed by Plaintiff goes significantly beyond remedying any decrease in value of the jury's back pay award and would serve to grossly overcompensate Plaintiff. The Treasury Rate fairly and adequately covers the decrease in the value of the back pay award and inflation. Indeed, the applicable pre-judgment interest period of January 8, 2019, through December 18, 2024, covers, as the court in *Yerkes v. Ohio State Highway Patrol* describes

9

as the "outset and peak of the COVID-19 pandemic and the subsequent economic tumult, which featured substantial fluctuations in interest rates and market conditions." 2024 U.S. Dist. LEXIS 217755, at *54 (S.D. Ohio Dec. 2, 2024). These fluctuations and market conditions do not support a 10% interest rate and application of that rate is unwarranted given the FCA's remedial scheme. *Id.* (holding that "awarding pre-judgment interest rate at 5.36% for the entire pre-judgment period would result in an unfair windfall to Plaintiff" and instead applying a 1.90% rate in accordance with 28 U.S.C. § 1961); *See Pittington*, 800 F.3d at 807 (noting that a court should consider the interest rates and inflation to ensure that the rate being applied will satisfy the remedial purpose of Title VII). Even if the Court were to consider the impact of higher inflation rates on its determination of how best to compensate Plaintiff for the lost time value of the back pay award, Plaintiff's proposed pre-judgment interest of $1,346,109.91 based on the 10% compounded interest rate is clearly excessive and would result in a massive windfall for him.[3]

> **D. The Appropriate Pre-Judgment Interest on Plaintiff's Back Pay Award Computed at Applicable Treasury Yield Rates is $115,089.89, Using the Period From the Unsealing of Plaintiff's Complaint to the Date of the Jury's Verdict.**

As discussed in Section B, courts have used the Treasury Rate in accordance with 28 U.S.C. § 1961 to calculate pre-judgment interest on an award of back pay. Section 1961 provides that "post-judgment interest shall be calculated from the date of the entry of judgment, at the rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of

---

[3] Miraca notes this Court's recent award of 8% pre-judgment interest when faced with a question of whether to apply Tennessee's 10% rate or the then-existing federal post-judgment statutory rate of 5.36%. *See Yost v. Blue Pine Constr. Corp.*, 2023 U.S. Dist. LEXIS 136733, at *2-3 (M.D. Tenn. Aug. 7, 2023). Importantly, as the Court identified in its decision, the *Yost* Plaintiff requested a "flat eight percent interest on the back-pay award, not eight percent annum," which supported application of the higher interest rate. *Id.* Here, the Plaintiff has requested compounded interest. Miraca does not dispute that compounded interest, at the Treasury Rate, is appropriate in this case.

10

Governors of the Federal Reserve System for the calendar week preceding[] the date of judgment." Miraca submits that in order to calculate the pre-judgment interest in accordance with 28 U.S.C. § 1961, the Court can apply the rate equal to the weekly average 1-year constant maturity Treasury yield, starting with the calendar week preceding the unsealing of the case on January 8, 2019. *See Hopkins v. Nichols*, 2024 U.S. Dist. LEXIS 164386, at *3-4 (M.D. Tenn. Sept. 12, 2024) (applying the post-judgment statutory rate to plaintiff's out of pocket litigation expenses). Considering the case specific factors in *Pittington*, including the requirement to consider the interest rates and the remedial purpose of the statute at hand, application of the Treasury rate here is more than fair because Plaintiff will also receive the doubled back pay award, unlike the plaintiff in *Pittington* or in any of the other cases Plaintiff cites in support of his argument for application of the higher rate. 800 F.3d at 807 (reversing district court's application of the Treasury rate of 0.66% to plaintiff's back pay award because the district court failed to adequately consider the specific facts of the case before applying the federal statutory rate).

Defendant submits for the Court's consideration, the pre-judgment interest calculation using the rates throughout the pre-judgment interest period proposed by Miraca. *See* Exhibit A. Mr. Robinson, Miraca's damages expert, has provided a spreadsheet indicating the amount of interest due based on the Treasury Yield as published by the Federal Reserve for the period from January 8, 2019 to December 18, 2024, which results in pre-judgment interest of $115,089.89. *See* Exhibit 1 to Robinson Declaration, Exhibit A.[4]

---

[4] Should the Court adopt Plaintiff's proposed pre-judgment period of January 8, 2014, through December 18, 2024, Mr. Robinson has also calculated the amount of interest due based at the Treasury Yield rates published by the Federal Reserve, which totals $154,768.31. *See* Exhibit 2 to Robinson Declaration, Exhibit A.

### E. Plaintiff Is Not Entitled to Pre-Judgment Interest on the Award of Compensatory Damages.

Plaintiff also argues that he is also entitled to pre-judgment interest on the jury's award of compensatory damages. First, Plaintiff ignores the statute under which he brought his retaliation claim, 31 U.S.C. §3730(h). While that statute explicitly provides for interest on the back pay award, it makes no such provision for the special damages award. *See* 31 U.S.C. § 3730(h)(2) (providing for "interest on the back pay, and compensation for any special damages . . ."). Had Congress intended plaintiffs with False Claims Act retaliation claims to be entitled to interest on special damages, it would have explicitly provided as much, just as it did for the back pay award. Second, Plaintiff also conveniently ignores this Court's recent denial of a litigant's request to award pre-judgment interest on a compensatory damages award for the simple reason that "Plaintiffs were not deprived of the use of any money for non-economic damages included in that award." *Hopkins v. Nichols*, 2024 U.S. Dist. LEXIS 164386, at *3-4 (M.D. Tenn. Sept. 12, 2024) (citing *Umfress v. City of Memphis*, 2020 U.S. Dist. LEXIS 261844, at *3 (W.D. Tenn. Oct. 19, 2020) ("Prejudgment interest is necessary with an award of backpay because Plaintiff was wrongfully deprived of the time-value of her wages. The same is not true for non-economic damages, where the jury is asked to assess the full extent of injury and damages, and she is not entitled to be repaid for the time value of the § 1983 award.")). Here, like in *Hopkins* and *Umfress*, the jury was asked to "assess the full extent of injury and damages," and it awarded Plaintiff $292,919 in compensatory damages based on its analysis. Accordingly, the Court should decline to award Plaintiff pre-judgment interest on the jury's award of compensatory damages.

### **CONCLUSION**

For the reasons stated above, the Court should apply the Treasury rates in accordance with 28 U.S.C. § 1961 to Plaintiff's back pay award, which fully and fairly compensates Plaintiff for

the time value of the back pay the jury awarded. Applying the Treasury rates will yield $115,089.89 for the period from January 8, 2019 (when Plaintiff's complaint was first unsealed) to December 18, 2024. This will avoid imposing interest on Miraca for the period during which it was unaware of Plaintiff's claim because he chose to file it under seal. If, however, the Court elects to award Plaintiff interest for the full period sought by Plaintiff (January 8, 2014 to December 18, 2024) the Court's interest award, using the applicable Treasury rates would total $154,768.31. In no event is Plaintiff entitled to the application of Tennessee's statutory interest rate which would result in an approximately 10 times greater windfall for him. Finally, in accord with the clear language of the False Claims Act retaliation provision and this Court's prior decisions recognizing that non-economic damages do not represent money the Plaintiff would otherwise have had the use of, Plaintiff's request for pre-judgment interest on the compensatory damages award should be denied.

Respectfully submitted,

**BASS, BERRY & SIMS PLC**

/s/ *Matthew M. Curley*
Matthew M. Curley, Esq.
Briana Sprick Schuster, Esq.
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
mcurley@bassberry.com

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**
Natashia Tidwell, Esq.
Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1684
NTidwell@mintz.com

13

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**
David Barmak, Esq.
Danielle Bereznay, Esq.
555 12th Street NW, Suite 1100
Washington, D.C. 20004
(202) 434-7300
DBarmak@mintz.com
DMBereznay@mintz.com

*Counsel for Defendant Miraca Life Sciences, Inc.*

## CERTIFICATE OF SERVICE

  The undersigned certifies that on January 28, 2025, a true and correct copy of the foregoing has been served via the Court's CM/ECF system on the following counsel of record:

James F. Sanders
William T. Ramsey
Nathan C. Sanders
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
jsanders@nealharwell.com
wtr@nealharwell.com
nsanders@nealharwell.com

                /s/ *Matthew M. Curley*