IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* PAUL DORSA, | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:13-cv-01025 |
| v. | ) ) | JUDGE CAMPBELL |
| MIRACA LIFE SCIENCES, | ) ) ) | MAGISTRATE JUDGE FRENSLEY |
| Defendant. | ) | |

## ORDER AND MEMORANDUM

Pending before the Court is Plaintiff's motion for attorneys' fees, litigation costs, and expenses in accordance with 31 U.S.C. § 3730(h), and Federal Rule of Civil Procedure 54(d). (Doc. No. 328). Defendant Miraca Life Sciences, Inc. ("Miraca") filed a response in opposition (Doc. No. 333), to which Plaintiff filed a reply (Doc. No. 335), and Defendant filed a sur-reply (Doc. No. 338).

For the reasons stated herein, Plaintiff's Motion (Doc. No. 328) is **GRANTED** with modifications.

### I.   BACKGROUND

In September 2013, Plaintiff brought this action on behalf of himself and in the name of the United States of America alleging Miraca violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. Shortly thereafter, Plaintiff was fired, and he added a retaliation claim to the complaint. The underlying fraud claims were resolved by settlement in May 2019. (*See* Doc. No. 87). Litigation on the retaliation claim commenced in July 2019. After two interlocutory appeals on the Court's orders denying Defendant's motion to compel arbitration (*see* Doc. Nos. 112, 125), discovery commenced in the summer of 2022, and the claim ultimately proceeded to trial in

December 2024. Following a six-day trial, a jury found in favor of Plaintiff and awarded damages of $732,298.00 in backpay and $292,919.00 in compensatory damages. (*See* Verdict, Doc. No. 308; Judgment, Doc. No. 312). The Court later amended the Judgment to include doubled backpay pursuant to 31 U.S.C. § 3170(h)(1), (2), prejudgment interest on the undoubled backpay, and post-judgment interest. (*See* Amended Judgment, Doc. No. 326).

Plaintiff now seeks an award of $2,489,912.50 in attorneys' fees. Plaintiff also seeks $113,506.15 in litigation costs and expenses, and post-judgment interest on the fee and costs award at the statutory rate beginning on the date of Judgment. In support of the motion, Plaintiff filed a memorandum of law (Doc. No. 329), declarations of Plaintiff's attorney James F. Sanders (Doc. Nos. 330, 335-1), logs of attorney time and litigation costs (Doc. No. 330, Exs. A-C, and E), a declaration from Nashville attorney Ed Lanquist concerning the reasonableness of the hourly rate and total fees requested (Doc. No. 329-1), and other summaries and alternative calculations (Doc. No. 330, Ex. D; Doc. No. 335, Exs. A-D).

Defendant Miraca Life Sciences, Inc. ("Miraca"), does not object to an award of attorneys' fees, but argues the amount requested is unreasonable and should be reduced by at least 65%. (Doc. No. 333). Defendant also contends that Plaintiff is not entitled to recover litigation costs under 31 U.S.C. § 3730(h)(2). (*Id*. at 19-20). Defendant does not object to an award of post-judgment interest on the fee and cost award.

## II. LEGAL STANDARD

Plaintiff seeks an award of attorneys' fees, litigation costs, and expenses under 31 U.S.C. § 3730(h), which provides:

2

> **(h) Relief from retaliatory actions. –**
>
> > **(1) In general.** -- Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
> >
> > **(2) Relief.** -- Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h).

A.  Attorneys' Fees

The Court's primary concern is that the attorneys' fee is "reasonable." *Gonter v. Hunt Valve Co., Inc*. 510 F.3d 610, 616 (6th Cir. 2007), *abrogated on other grounds by Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "A reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Id.* (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) (emphasis omitted).

"The starting point for determining the reasonableness of a requested fee is the 'lodestar' analysis, whereby the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by the reasonably hourly rate." *Imwalle v. Reliance Med. Prods., Inc*., 515 F.3d 531, 551-52 (6th Cir. 2008). "But trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection";

3

therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* at 838.

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791 (citing *Adock–Ladd v. Sec'y of Treas.,* 227 F.3d 343, 350 (6th Cir. 2000)). "Once the lodestar figure is established, the trial court is permitted to consider other factors, and to adjust the award upward or downward to achieve a reasonable result." *Id*. at 792 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In addition to the lodestar analysis, the court also considers any relevant *Johnson* factors and whether some adjustment to the award is required under those factors. *See id.* at 792 (citing *Johnson v. Ga. Highway Exp., Inc*., 488 F.2d 714 (5th Cir. 1974)). These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. The Sixth Circuit has recognized that, often, these factors are naturally blended into the reasonableness analysis. *Id. (citing Hensley*, 461 U.S. at 434, n. 9).

1. <u>Reasonable Hourly Rate</u>

Plaintiff was represented in this case by attorneys from the law firm Neal & Harwell.[1] Work on the case was performed by partners W. David Bridgers, William Ramsey, Kendra Samson, James Sanders, Isaac Sanders, and Nathan Sanders; Nathan Sanders was promoted to partner in 2021 during the pendency of this litigation and worked on the case as an associate and as a partner.

- James Sanders worked on the case from 2018 through 2025. His hour rate was $600 from 2018-2021; $650 in 2022; and $750 in 2023-2025. He was a partner at Neal & Harwell for almost 50 years and has litigated hundreds of civil and criminal lawsuits.

- W. David Bridgers left Neal and Harwell in 2015. His hourly rate was $450 in 2013 and $475 in 2015.[2] He graduated from Vermont Law School in 1993, joined Neal & Harwell as an associate in 1997, and became a member in 2003.

- William Ramsey began work on the case in 2018 at a rate of $500 per hour. His hourly rate increased to $550 per hour in 2022, to $625 per hour in 2023, and to $650 per hour in 2024. Ramsey graduated from the University of Tennessee College of Law in 1980 and has practiced law in Nashville for over 45 years. He has extensive experience in complex litigation, False Claims Act and qui tam litigation, white-collar criminal defense, and employment litigation, including wrongful termination and retaliation matters.

---

[1] After this motion was fully briefed, the law firm Neal & Harwell closed its operations. Attorney James Sanders submitted a declaration describing the experience and skill of each of the attorneys (and paralegal), and their hourly rates. (*See* Doc. No. 330).

- Kendra Samson graduated from the University of Kentucky College of Law in 1997 and joined Neal & Harwell as an associate in 1997. She became a member in 2007. Her practice focuses on employment law, including litigation of wrongful discharge and retaliation cases. She began work on this case in 2020 at a rate of $450 per hour. Her hourly rate increased to $500 in 2022, $575 in 2024, and $600 in 2025.

- Isaac Sanders graduated from Vanderbilt Law School in 2010 and joined Neal & Harwell as an associate in 2010. He became a member of the firm in 2018. Isaac Sanders worked on this case at various points beginning in 2019 when his hourly rate was $375. His rate increased to $450 per hour in 2022; $475 per hour in 2023; and $500 per hour in 2025.

- Nathan Sanders graduated from Vanderbilt Law School in 2013. In 2016, he joined Neal & Harwell as an associate. In 2018, his hourly rate was $285 per hour. That increased to $320 per hour in 2019. In 2021, he was promoted to partner. Thereafter, his hourly rates were as follows: $350 in 2021; $450 in 2022, $475 in 2023, $500 in 2024, and $525 in 2025.

The time logs show that four associates worked on the case: Olivia Arboneaux, Satchel Fowler, John Haubenreich, and Nathan Sanders.

- John Haubenreich graduated from Vanderbilt Law School in 2010. He worked on the case in 2013 at an hourly rate of $250 per hour; and in 2015 at an hourly rate of $300 per hour. Haubenreich left the firm in 2015.

- Olivia Arboneaux graduated from Vanderbilt Law School in 2022. She worked on the case in 2023 and 2024 at hours rates of $300 and $350 per hour respectively.

- Satchel Fowler joined Neal & Harwell in 2024 following a federal clerkship. His hourly rate was $375 in 2024 and $400 in 2025.

Christine Marshall, a paralegal with approximately 35 years of experience, worked on the case between 2018 and 2025. Her hourly rates were as follows: $170 per hour in 2018; $190 per hour in 2022-2023; and $200 per hour in 2024-25.[2]

Plaintiff submits that his attorneys' standard hourly billing rates are reasonable based on their skill and experience and the market in which they practice. Plaintiff further submits it is reasonable to apply the rates in effect in 2024 across the pendency of the litigation, which spanned over 11 years, given the delay in receiving payment. James Sanders states that, based on his experience practicing law in Tennessee and conversations with lawyers at other firms, the standard hourly rates of Neal & Harwell attorneys and paralegals working on this case are consistent with, or lower than, the rates billed at other firms for comparable work. Plaintiff also submits the Declaration of Edward Lanquist, a local attorney. (Doc. No. 329-1). Mr. Lanquist stated that in his opinion, based on his experience with fee petitions and knowledge of hourly rates charged by attorneys at his firm, Baker Donelson, and by other attorneys in the Nashville market, the standard hourly rates of the Neal & Harwell attorneys who worked on this case are "quite reasonable." He states that some Nashville attorneys charge higher rates.

Defendant argues that the evidence presented by Plaintiff is insufficient to establish that the rates are reasonable because it does not reference specific rates charged in other cases.[3]

---

[2] No hours are reflected for Christine Marshall from 2019-2021.

[3] The Court might have been persuaded in some fashion had Defendant's local counsel provided his firm's rates to demonstrate the unreasonableness of Plaintiff's request. The Court suspects that comparison would not have been to Defendant's benefit.

Defendant observes that, in 2024, Magistrate Judge Frensley and Judge Trauger found that partner-level rates of $535 and $435 per hour were unreasonable and lowered them to $450 per hour. *See Moore v. Mt. Zion Baptist Church*, No. 3:22-cv-00965, 2024 WL 4133030, at * 5 (Sept. 10, 2024). Defendant argues the hourly rate approved in *Moore* is far less than the $750 hourly rate sought by James Sanders or the $475 and $500 hourly rates claimed by the most junior partners, Isaac Sanders and Nathan Sanders. Defendant argues that because Plaintiff has not cited specific rates other than those in *Moore*, the Court should approve rates equal to the hourly rates approved in that case.

The Court disagrees that Plaintiff has provided insufficient evidence to support the reasonableness of the hourly rates charged by Plaintiff's counsel. Although Plaintiff did not provide specific rates charged by attorneys with comparable experience in the market, the Court is familiar with the hourly rates of attorneys in the market. *See Waldo v. Consumers Energy Co.*, 727 F.3d 802, 821-22 (6th Cir. 2013) (stating that the Court may deem rates reasonable based on "awards in analogous cases" and "its own knowledge and experience in handling similar fee requests"). The Court notes that the hourly rates of Nathan Sanders and Isaac Sanders – $475 and $500 – are within the range of fee awards that have been found to be reasonable in this District. *See McGruder v. Metro Gov't of Nashville*, 2022 WL 2975298 (M.D. Tenn. Sept 27, 2022) (finding $500 per hour a reasonable hourly rate for an attorney with 11-15 years of experience); *Moore*, 2024 WL 4133030, at *5 (reviewing fee awards from the Middle District of Tennessee that found rates between $450-550 per hour to be reasonable). And although James Sanders' hourly rate is higher than that approved in *Moore*, with almost 50 years of experience, he has approximately 30 years more experience than the attorney in that case. The Court finds the hourly

rates claimed by Plaintiff's counsel to be reasonable given their experience, the skill required for the protracted litigation, and the outcome in the case.

2. Applying the Hourly Rate from 2024

Plaintiff argues it is reasonable to apply the rates in effect in 2024 across the pendency of the litigation, which spanned over 11 years, given the delay in receiving payment. Defendant contends the rates should be adjusted downward to prevent an impermissible windfall. Defendant notes that many of the attorneys have increased their rates far beyond the pace of inflation and recovery at 2024 rates would allow Plaintiff to recover fees at partner-level rates for hundreds of hours of work performed by Nathan Sanders while he was an associate.

Plaintiff responds that calculation of attorneys' fees at 2024 rates is not a windfall and note that it results in a total fee award comparable to the 6.65% rate the Court awarded for prejudgment interest. (*See* Suppl. Decl. of James Sanders, Doc. No. 335-1, Ex. C (comparing total fees at contemporaneous rates plus interest with total fees at 2024 rates)).[4]

Courts in this Circuit have "occasionally approved" awarding current, rather than historical, rates. *See Gonter*, 510 F.3d at 617. But the Sixth Circuit does not "mandate[]—or even prefer[]—application of current rates." *Id*. In deciding whether to apply current or historical rates, the Court must counterbalance accounting for the delay in payment with the need to avoid

---

[4] Applying the variable hourly rate the total billable amount ending June 5, 2025, is $2,261,588.75. (Ex. C). Using the 2024 hourly rates, the total billable amount is $2,567,844.27. (Decl. of James Sanders, Doc. No. 330, Ex. B). According to Plaintiff's calculations, the total fee calculated at contemporaneous rates plus interest equals $2,574,561.31. When calculated using the hourly rates in effect in 2024, the total fee as of June 5, 2025, equals $2,447,000.00. These calculations exclude the time of John Haubenreich and W. David Bridgers because these attorneys did not perform any work on the case after 2015 and Plaintiff has requested their time at contemporaneous rates. (Supp. Decl. of James Sanders, Doc. No. 335-1, Ex. C).

9

"produc[ing] windfalls" for attorneys. *Id.* Here, the Court finds the use of 2024 rates accomplishes "rough justice" to account for the delay in payment and does not result in a windfall to Plaintiff.

    3. <u>Reasonable Number of Hours</u>

Plaintiff submitted invoices showing the time log of attorney and paralegal hours worked between September 13, 2025, and June 5, 2025 (Doc. No. 330-2), and June 6, 2025, through July 17, 2025 (Doc. No. 335-2). As of June 5, 2025, the total number of hours worked was 4,625.25; the vast majority of this time was incurred by Nathan Sanders (2,071 hours), James Sanders (822.75 hours), and Kendra Samson (812 hours). From June 6, 2025, to July 17, 2025, the total number of hours worked was 75.75; the majority of which was billed by Nathan Sanders (23.25 hours) and Satchel Fowler (31.75 hours). Plaintiff contends the hours worked are reasonable given the duration of the case and Defendant's litigation tactics.

Defendant argues the fee award should be substantially reduced because Plaintiff's attorneys over-litigated the case, devoted unreasonable amounts of time to discovery disputes and damages theories that were largely unsuccessful, and staffed the case with five senior-level partners resulting in partners completing associate level tasks. In addition, Defendant contends the time spent on Plaintiff's damages expert (210.50 hours) should be excluded entirely because the jury rejected Plaintiff's damages theory, awarding only about 16% of the damages estimated by Plaintiff's expert and should be further reduced based on Plaintiff's lack of success at trial as measured by the jury's damages award. Defendant also argues that time entries representing approximately 3% of the billing should be excluded because they are "vague" and "generic."

In reviewing the reasonableness of hours worked, courts assess whether the hours billed are consistent with "the reasonable billing practices of the profession." *The Ne. Ohio Coal. for the Homeless*, 831 F.3d at 708 (quotation marks omitted). Hours worked are reasonable if "a

10

Case 3:13-cv-01025   Document 343   Filed 03/05/26   Page 10 of 15 PageID #: 5737

reasonable attorney would have believed [the hours] to be reasonably expended in pursuit of success at the point in time when the work was performed." *Id*. (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001)). Courts awarding fees under federal statutes have an obligation "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *See Hensley*, 461 U.S. at 434.

In determining whether an adjustment to the loadstar amount is warranted, the Court is not required to conduct a line-item review of the records, and may instead do "rough justice" through an across the board reduction. *Howe v. City of Akron*, 705 F. App'x 376, 382 (6th Cir. 2017); *see also*, *Ky. Rest. Concepts, Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004) (explaining that hours may be cut where the time was "excessive," using an "arbitrary but essentially fair approach" of simply deducting a percentage of the total hours).

There is no doubt that this was a hard-fought case by both sides. Plaintiff's zealous litigation or particular strategic choices, for example regarding proof of damages or in discovery disputes, though at times unsuccessful, does not merit a reduction in the fees award. The Court also does find that the level of description in certain time entries or Plaintiff's success at trial as measured by the damages sought as compared to the jury award is cause for a reduction in the fee award. However, the Court is persuaded that a reduction is warranted due to the number of partners staffed on the case (almost 85% of attorney time billed was partner time) and overstaffing in general because it resulted in partners performing associate level work, duplication of work in terms of multiple levels of review of filings, excessive conferencing, and several depositions being attended by multiple partners.

11

In light of the top-heavy staffing and duplication of work, the Court finds an across-the-board reduction of 25% in the total fee award is warranted. Therefore, the total attorneys' fee award requested – $2,489,912.50 – will be reduced to $1,867,434.38.

### III. LITIGATION COSTS

Plaintiff seeks recovery of $113,506.15 in litigation costs, not including costs listed on the Bill of Costs submitted to the Clerk of Court. This includes $6,393.28 in travel expenses, $15,118.91 in e-discovery expenses, a $5,110.00 mediation fee, and $86,883.96 in expert fees. (*See* Decl. of James Sanders, Doc. No. 330, Ex. E; Supp. Decl. of James Sanders, Doc. No. 335-1, Ex. A).

As the prevailing party, Plaintiff is "entitled to all relief necessary to make that employee … whole," including "litigation costs and reasonable attorneys' fees" under 31 U.S.C. § 3730(h). Plaintiff argues that travel expenses, e-discovery expenses, and mediator fees can be appropriately included within an award of attorney fees. Plaintiff does not contend that expert witness fees may be included as part of an attorneys' fees award, but argues that expert witness fees are otherwise recoverable under the FCA under the provision allowing for "all relief necessary to make …[Plaintiff] whole" and as a "litigation cost."

The Court begins with consideration of whether the travel expenses, e-discovery expenses, and mediator fees requested by Plaintiff should be awarded as part of the attorneys' fees award. Plaintiff points to Sixth Circuit precedent allowing recovery of certain out of pocket attorney expenses as part of the award for attorneys' fees. *See Echols v. Express Auto, Inc.*, 857 F. App'x, 224, 231 (6th Cir. 2021) (stating that reasonable photocopying, paralegal expenses, and travel and telephone expenses are recoverable as part of reasonable attorney's fees) (citing *Northcross v. Bd. of Educ. of Memphis City Schs*., 611 F.2d 624, 639 (6th Cir. 1979), *abrogated on other grounds*

*recognized by L&W Supply Corp. v. Acuity*, 475 F.3d 737, 739, n.6 (6th Cir. 2007)); *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802 (2013) (affirming award of costs for focus groups, mock trials, jury-selection services, and mediation as part of the award of attorneys' fees)).[5]

Defendant does not dispute that these types of expenses may be included as part of attorneys' fees, but argues that none of the expenses can be recovered as "costs" under 31 U.S.C. § 3730(h). Because the expenses for travel in the amount of $6,393.28, e-discovery in the amount of $15,118.91, and mediation fees in the amount of $5,110.00 are reasonable and recoverable as part of the award for attorneys' fees, the motion for recovery of those expenses will be granted.

With regard to the expert fees, Plaintiff contends that they are recoverable either as "litigation costs" under § 3730(h)(2) or as part of the court's authority to provide "all relief necessary" to make Plaintiff "whole." Defendant argues that Plaintiff reads the statute too broadly and that expert fees are not recoverable under either theory.

The Supreme Court has established that a statutory provision for an award of costs means only those costs in 28 U.S.C. §§ 1821 and 1920, unless there is explicit statutory instruction to the contrary. (Doc. No. 333 at 19 (citing *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339 (2019)). In *Rimini*, the Supreme Court held that the Copyright Act provision that allows district courts to award "full costs" to a party in copyright litigation covers only the categories of expenses

---

[5] In *Echols*, when addressing claims for attorneys' fees and costs under the Equal Credit Opportunity Act, the Sixth Circuit recognized that most federal fee shifting statutes mirror the language of 42 U.S.C. § 1988(b) and observed that courts have often "borrowed from § 1988(b) jurisprudence when analyzing related fee-shifting statutes." 857 F. App'x 224, 226 (6th Cir. 2021) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562, (1986) (noting there are over 100 separate statutes providing for attorney's fees, nearly all of which require that the attorney's fee must be "reasonable"); and *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (explaining that "the standards set forth in [*Hensley*] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'")). The Court sees no reason not to apply the same standard regarding what may be included in "reasonable attorneys' fees" in this case.

13

in the general costs statute, 28 U.S.C. §§ 1821, 1920, and did not include litigation expenses such as expert witnesses, e-discovery, and jury consulting.[6] 586 U.S. at 336. The holding in *Rimini* is not narrow – the Supreme Court directed that whenever a federal statute simply refers to "costs," "federal courts are limited to awarding the costs specified in §§ 1821 and 1920." *Id*. 339, 340 ("Our cases, in sum, establish a clear rule: A statute awarding "costs" will not be construed as authorizing an award of litigation expenses beyond the six categories listed in §§ 1821 and 1920, absent an explicit statutory instruction to that effect.").

Plaintiff argues that Section 3730(h) provides such "explicit statutory instruction," pointing to the provision for "all relief" allowing the terminated employee to be "made whole," and that the list of remedies in subsection (h)(2) is non-exhaustive. Plaintiff also argues that restricting "litigation costs" to only those costs available to any prevailing litigant under 28 U.S.C. § 1920, would render the term mere surplusage. Plaintiff asserts that even if "litigation costs" is read narrowly, he would still be entitled to recover expert witness fees under the "all relief" provision of the statute.

Defendant argues that there is no indication in the statute that Congress granted courts the authority to award expenses in addition to costs and attorneys' fees. First, Defendant notes that another subsection states that a qui tam plaintiff is entitled to recover not just "reasonable attorneys' fees costs," but also "an amount for reasonable expenses which the court finds to have been necessarily incurred." 31 U.S.C. § 3730(d)(1)-(2). Defendant argues that this demonstrates that Congress knew "how to adopt the omitted language" entitling FCA plaintiffs to recoup

---

[6] The Copyright Act provides: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

14

Case 3:13-cv-01025 Document 343 Filed 03/05/26 Page 14 of 15 PageID #: 5741

expenses and opted not to do so in the retaliation provision. (Doc. No. 333 at 20 (citing *Lackey v. Stinnie*, 145 S. Ct. 659, 669-70 (2025)). In response to Plaintiff's argument that the court may craft any remedy that will make him "whole," Defendant argues that the next subsection defines what relief is available to make a plaintiff "whole," and it does not include expert witness fees.

Defendant has the better argument. The statute does not contain explicit instruction to award costs other than those included in 28 U.S.C. §§ 1821 and 1920. Indeed, given that elsewhere in the same section, Congress expressly provided for awards of "reasonable expenses" in addition to attorneys' fees and costs, suggests that expenses were intentionally excluded from Section 3730(h). The Court is also not persuaded that the directive that the employee is "entitled to all relief necessary to make that employee … whole" grants the court boundless authority to craft relief, particularly where the statute lists specific relief available, which does not encompass expert witness fees.

In sum, the Court finds Plaintiff is entitled to $6,393.28 in travel expenses, $15,118.91 in e-discovery expenses, and $5,110.00 in mediation fee as part of the award for attorneys' fees, but is not entitled to recover fees for expert witnesses.

## IV. CONCLUSION

For the reasons stated above, Plaintiff is hereby awarded a total of **$1,867,434.38** in attorneys' fees and a total of **$26,662.19** in litigation expenses. Plaintiff is also awarded post judgment interest of 4.22% from December 18, 2024. *See* 28 U.S.C. § 1961; *Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 151-52 (6th Cir. 2010) (interest calculated from date of judgment).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE